NOT DESIGNATED FOR PUBLICATION

No. 118,549

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVAN ALEX RANES,
*Appellant.*

MEMORANDUM OPINION

Appeal from Montgomery District Court; JEFFREY GETTLER, judge. Opinion filed December 7, 2018. Sentence vacated and case remanded with directions.

*Caroline Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., MALONE, J., and STUTZMAN, S.J.

PER CURIAM: Stevan A. Ranes contends his sentence for intentional second-degree murder was illegal. We agree, vacate that sentence, and remand for resentencing.

FACTS AND PROCEDURAL BACKGROUND

In May 2017, Ranes, then 17 years old, was charged as an adult with premeditated first-degree murder, an off-grid person felony. In June 2017, Ranes completed a financial affidavit in which he disclosed he was 17 years old, had a 10th grade education, was

1

unemployed, had no assets, was single, and had no children. Based on Ranes' eligibility shown by the affidavit, the district court appointed a public defender to represent him.

As part of a plea agreement, the State amended its charge against Ranes to intentional second-degree murder, a severity level 1 person felony. During the process of advising Ranes about the amended charge, the district court informed him the sentence included postrelease supervision for a 36-month term. The court brought to the attention of the parties a discrepancy between the amended information and the plea agreement, which stated the sentence included lifetime postrelease. The district court asked which was correct, and the prosecutor said the correct term was lifetime postrelease. The district court explained that to Ranes, who then entered his no contest plea to the amended charge of intentional second-degree murder; the court accepted the plea and found Ranes guilty. The parties had no agreement for sentencing.

When he appeared for sentencing, Ranes did not object to his criminal history score—category H—and the district court informed him the penalties for second-degree intentional murder included postrelease supervision for 36 months. The State and defense counsel informed the court that the term of postrelease supervision was life, which the State represented was due to applicable special rules, not specified. The district court sentenced Ranes to the aggravated presumed prison term of 186 months, followed by lifetime postrelease supervision.

The court then spoke to Ranes about the $2,300 in fees for his appointed counsel:

"THE COURT: Mr. Ranes, when you're not in prison—about 14 years or so—are you going to be capable of working?
"[RANES]: Yes.
"THE COURT: And with sufficient time do you believe you can reimburse the State for your court-appointed attorney fees?
"[RANES]: Yes.

2

"[THE STATE]: I think it is also important to note here that he will be released at some point as a fairly young man, and *he can be paying on these fees while he's on lifetime postrelease*.

"THE COURT: *Correct*." (Emphasis added.)

The district court then assessed various fees and costs to Ranes, including a $100 Board of Indigents' Defense Services (BIDS) application fee and the $2,300 in court-appointed attorney fees. The district judge stated, "[the] Court is making a finding that Mr. Ranes does have the financial means in which to pay upon release from prison."

Ranes timely appeals his sentence.

ANALYSIS

At the outset we note that Ranes makes a passing reference in his brief to a claim that the district court "failed to inquire into a potential conflict of interest between him and his appointed attorney once it became aware of it." He further states he wrote to the judge before sentencing to tell him he had not seen the discovery against him and he wanted to see it, but he did not want his attorney removed from his case.

Since Ranes does not elaborate on any conflict with his trial counsel and neither of the two issues he presents involve that complaint, we give it no further consideration. Issues not adequately briefed are deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

The two issues Ranes does present for our review do not require extensive analysis. He contends the district court illegally ordered lifetime postrelease supervision and failed to adequately consider his financial resources when ordering him to reimburse BIDS for his attorney fees.

3

*Lifetime postrelease*

Ranes argues the district court's lifetime postrelease order rendered his sentence illegal, since the statutorily prescribed term for intentional second-degree murder is 36 months. He acknowledges he failed to object to the postrelease order at the time of sentencing but relies on the statutory authority granted for correction of an illegal sentence at any time. K.S.A. 2017 Supp. 22-3504(1). Ranes asks us to vacate the sentence and remand his case to the district court for resentencing with a legal postrelease term.

Whether a sentence is illegal within the meaning of K.S.A. 2017 Supp. 22-3504 is a question of law over which we have unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Interpretation of a sentencing statute is likewise a question of law, and the standard of review is unlimited. *State v. Warren*, 307 Kan. 609, 612, 412 P.3d 993 (2018).

"A sentence is illegal under K.S.A. 22-3504 when: (1) it is imposed by a court without jurisdiction; (2) it does not conform to the applicable statutory provisions, either in character or punishment; or (3) it is ambiguous with respect to the time and manner in which it is to be served." *State v. Hayes*, 307 Kan. 537, 538, 411 P.3d 1225 (2018). Intentional second-degree murder is a severity level 1 person felony. K.S.A. 2017 Supp. 21-5403(a)(1), (b)(1). Persons sentenced for nondrug severity level 1 crimes committed after July 1, 1993, "must serve 36 months on postrelease supervision." K.S.A. 2017 Supp. 22-3717(d)(1)(A).

The State concedes the district court's order for lifetime postrelease supervision did not conform to the statute. Therefore, the State agrees the lifetime postrelease order should be vacated and the case should be remanded for the district court to order a 36 month period of postrelease supervision.

4

*Order for reimbursement of attorney fees*

Ranes next asserts the district court ordered him to reimburse BIDS for his attorney fees without following the requirements of K.S.A. 22-4513(b). He asks us to vacate the district court's order for attorney fees and remand the case for compliance with the statute. The State first contends Ranes failed to preserve the issue for appeal but also argues that the reimbursement question is not finally decided until the prisoner review board sets the conditions for Ranes' postrelease supervision. See K.S.A. 2017 Supp. 22-3717(m)(5) (to determine amount and method of payment, board must consider financial resources and nature of the burden repayment will impose). Alternatively, the State maintains the district court did comply with the requirements of K.S.A. 22-4513 and, even if it did not comply, any error was harmless since it will be the prisoner review board that will make the final decision on reimbursement.

Whether the district court satisfied the statutory requirements in assessing BIDS attorney fees is a question of law over which an appellate court has unlimited review. *State v. Hernandez*, 292 Kan. 598, 609, 257 P.3d 767 (2011). The applicable statute, K.S.A. 22-4513, states in relevant part:

> "(a) If the defendant is convicted, all expenditures made by the state board of indigents' defense services to provide counsel and other defense services to such defendant or the amount allowed by the board of indigents' defense reimbursement tables as provided in K.S.A. 22-4522, and amendments thereto, whichever is less, shall be taxed against the defendant and shall be enforced as judgments for payment of money in civil cases.
>
> "(b) *In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose*. A defendant who has been required to pay such sum and who is not willfully in default in the payment thereof may at any time petition the court which sentenced the defendant to waive payment of such sum or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the

5

amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may waive payment of all or part of the amount due or modify the method of payment." (Emphasis added.)

The Kansas Supreme Court interpreted this statute in *State v. Robinson*, 281 Kan. 538, 132 P.3d 934 (2006). The court held that:

"A sentencing court assessing fees to reimburse the Board of Indigents' Defense Services under K.S.A. 2005 Supp. 22-4513 must consider on the record at the time of assessment the financial resources of the defendant and the nature of the burden that payment of the fees will impose." 281 Kan. 538, Syl. ¶ 1.

Ranes' case may be distinguished from *Robinson* in some important respects. In *Robinson*, the district court ordered the defendant to pay BIDS attorney fees without making *any* findings concerning the defendant's financial resources or the nature of the burden that payment of the fees would impose on him. Also, the district court in *Robinson* ordered the defendant to immediately begin making monthly payments toward the fees as a condition of his probation.

Here, the district court first sentenced Ranes to 186 months' imprisonment, then addressed Ranes and asked about his ability to work and reimburse the State when he was released from prison. From Ranes' financial affidavit and other information before him, the district judge was aware of Ranes' youth, his education level, his lack of employment or assets, and his lack of dependents. Ranes had told the judge at his plea hearing that he was 17 and believed he had a 10th grade education. At sentencing, the judge asked Ranes about his likely ability to work after his prison term and—"with sufficient time"—to pay back his attorney fees. The State interjected that Ranes would be relatively young when released and could pay "while he's on lifetime postrelease."

The district court's inquiry and on the record findings about Ranes' financial ability were minimal and their sufficiency to meet the standard required by *Robinson* would be questionable. We need not, however, make that determination since the district court ordered reimbursement while contemplating that Ranes would be subject to lifetime postrelease, during which time he could gradually pay what he owed. Now, all agree the postrelease period should be only 36 months rather than the remainder of Ranes' life.

Accordingly, the order for reimbursement to BIDS also must be vacated so the district court may consider that question in the context of a 36-month period of postrelease supervision. In its reexamination of the reimbursement question, the district court may take the opportunity to specify the findings directed in *Robinson*. As our Supreme Court emphasized there, explicit findings are necessary to ensure "meaningful appellate review of whether the court abused its discretion in setting the amount and method of payment of the fees." 281 Kan. at 546.

Sentence vacated and case remanded with directions for resentencing.